UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| DELMOND MAURICE DANDRIDGE, JR., | |
| Petitioner, | No. 20 C 50035 |
| v. | Judge Thomas M. Durkin |
| CHRISTOPHER RIVERS, Warden of the Administrative United States Penitentiary Thomson, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Delmond Maurice Dandridge Jr. is incarcerated at Administrative United States Penitentiary in Thomson, Illinois, in the custody of Warden Christopher Rivers. Dandridge filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to challenge the calculation of his time served. The Warden responded arguing that the petition should be dismissed for failure to exhaust administrative remedies. The petition is denied without prejudice.

**Background**

Dandridge was on parole from the Michigan State Department of Corrections when he was sentenced to 16 years in federal prison. He pled guilty to carjacking and use of a firearm. This crime constituted a parole violation, so he was returned to the Michigan Department of Corrections on February 23, 2018 for a parole violation hearing. On April 11, 2018, the parole board returned Dandridge to the federal system without an "order or recommendation by the court regarding service of

[Dandridge's] federal sentence with [his] state parole violation time." R. 22-1 at 2. Dandridge seeks credit for his time served from the date of his federal arraignment on April 16, 2016 to the date of his return to state court for his parole violation hearing on February 23, 2018.

The Bureau of Prisons's Administrative Remedy Program provides that an inmate may file with their institution an informal complaint (BP-8), and if that fails, a formal remedy request (BP-9). The inmate can appeal an unfavorable decision to the Regional Director with a BP-10. If the inmate is not satisfied with the Regional Director's decision, the inmate can appeal to the General Counsel with a BP-11. *See* 28 C.F.R. §§ 542.10-19. An inmate can then appeal the General Counsel's decision by means of a habeas corpus petition. *See Setser v. United States*, 566 U.S. 231, 244 (2012).

In accordance with the Administrative Remedy Program, Dandridge submitted a BP-8 Informal Remedy Request on July 19, 2019. *See* R. 18 at 30. On August 7, 2019, before receiving a response to that request, he filed this petition. His BP-8 was eventually denied on August 14, 2019. *See id.*

Despite filing this petition, Dandridge continued to proceed with the administrative process. On August 8, 2019, he submitted a BP-9 Request for Administrative Remedies, which was rejected because it lacked a signature. *See* R. 18 at 9, 29. Dandridge resubmitted his BP-9 which was denied on September 8, 2019 because the time served (from April 16, 2016 until April 10, 2018) was applied to Dandridge's Michigan State sentence. *See* R. 18 at 28. Dandridge appealed this

2

decision to the Regional Director with a BP-10 request on September 30, 2019. *See* R. 18 at 10.

On January 21, 2020 Dandridge sent a letter to the BOP asking if the regional office received the BP-10 request. R. 22-2 at 2. The BOP responded that his request was "rejected due to an issue with continuation pages." R. 22-2 at 2. On February 10, 2020, the BOP sent a letter informing Dandridge of the BOP's intent to contact the federal sentencing court regarding the "position on the concurrency of [Dandridge's] federal sentence with [his] state parole violation time." R. 22-1 at 2.

## Analysis

A federal inmate must exhaust administrative remedies before seeking a petition for habeas corpus relief. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004); *see also Deroo v. Holinka*, 373 F. App'x 617, 619 (7th Cir. 2010) ("Because we review a petition under § 2241 only after administrative remedies have been exhausted . . . the district court properly required [Petitioner] to pursue an administrative appeal before entertaining petitions on the underlying disciplinary proceedings."). Although there is no statutory requirement for exhaustion of administrative remedies under § 2241, "a common-law exhaustion rule applies." *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). Failure to exhaust is a sufficient basis to dismiss a habeas petition. *See Kane v. Zuercher*, 344 F. App'x 267, 269 (7th Cir. 2009).

Exhaustion of administrative remedies "means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the

3

merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Administrative remedies are deemed exhausted "when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Dandridge concedes he failed to exhaust his remedies but contends his failure is "because prison officials are preventing [him] from doing so," such that he should be deemed to have exhausted his administrative remedies. R. 1 at 8. Dandridge argues he was prevented from exhausting his remedies because the BOP did not answer his BP-8. R. 1 at 8. The problem with this argument is that the record shows that the BOP eventually responded to his BP-8, and Dandridge has continued to appeal its rejection. Moreover, even if the BOP had failed to respond, Dandridge was permitted to pursue appeal. *See* 28 C.F.R. § 542.18; *Day v. Daniels*, 673 F. App'x 582, 584 (7th Cir. 2017). Thus, even if the BP-8 was unanswered as Dandridge claims, administrative remedies were still available.

Dandridge makes two additional arguments: (1) the government waived the right to assert Dandridge failed to exhaust his administrative remedies, and (2) the government failed to respond to Dandridge's BP-10. *See* R. 22. Dandridge argues that government waived the exhaustion argument because he contends that the BOP's letter of February 10, 2020 shows the government "entertained" Dandridge's request. *See* R. 22-1 at 2. But the fact that the BOP is in the process of considering Dandridge's claim does not mean that the government has waived its right to have Dandridge complete that process. A petitioner must exhaust administrative remedies with the

4

BOP before asking the federal court to review the computation or execution of a sentence. *See Clemmons v. O'Brien*, 191 F.3d 455 (7th Cir. 1999).

A court can excuse the exhaustion requirement if there is an unreasonable delay on the part of the BOP. *See Gonzalez*, 355 F.3d at 1016 (quoting *Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002)). The delays in BOP responses to his filings, however, do not rise to such a level. This is primarily because, as discussed, the BOP regulations permit an inmate to continue with the administrative complaint process if the inmate have not received a response in a certain amount of time. And Dandridge has done so. Moreover, the BOP eventually responded to each request, allowed appeals, and recognized the need to contact the federal sentencing court about the grievance. *See* R. 18 at 9-10; R. 22-1 at 2. There is no basis to excuse exhaustion here because Dandridge has not been prejudiced by the exhaustion process.

## Conclusion

Therefore, Dandridge's petition is denied without prejudice to filing a new petition if necessary, after the administrative process is complete.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: July 1, 2020

5